UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy Record

    v.                                                                                       Civil No. 19-cv-034-LM
                                                                                        Opinion No. 2021 DNH 054 P

Hannaford Bros. Co., LLC

## **O R D E R**

Plaintiff Timothy Record alleges that his former employer, defendant Hannaford Bros. Co., LLC, subjected him to a hostile work environment in violation of federal and state employment law. Record claims that he endured pervasive sexual harassment based on his gender, sex, and sexual orientation, and that working conditions were so intolerable that a reasonable person would have felt forced to resign. Hannaford moves for summary judgment on all counts, arguing that no reasonable jury could find in Record's favor on his hostile work environment and constructive discharge claims. Record objects. For the following reasons, Hannaford's motion for summary judgment (doc. no. 24) is denied.

## BACKGROUND

The following facts come from the parties' summary judgment filings and attached exhibits. Except where noted, the facts are undisputed.

Hannaford operates a chain of supermarkets. Record worked at Hannaford for nearly ten years (October 2007 to August 2017) and received multiple

promotions. During his last year with Hannaford, Record worked as the assistant manager of the seafood department at Hannaford's store in Hampton, New Hampshire. Record is gay and his Hannaford coworkers were aware of his sexual orientation. In late February 2017, Hannaford hired Bruce Grover as the Hampton store's meat department manager. In that role, Grover served as Record's direct supervisor. Grover had no prior history with Hannaford—he was a new hire.

Shortly after Grover began working for Hannaford, he began making inappropriate comments about Record's sexual orientation. During Grover's first three weeks at Hannaford, in March 2017, he: (1) told another employee that Record is "three feet shorter with [his] head in the pillow"[1]; (2) struck Record in the genitals twice with a "long loaf of bread" and said "baseball, baseball"; and (3) told Record that everyone knows that he "eats the meat" after Record declined an offer to try a vendor's meat samples. In accordance with Hannaford's "Respect in the Workplace" policy (the "Policy"), Record reported this conduct to the evening operations manager, Jeff Howard, sometime in April 2017.[2] Howard spoke to Grover, who admitted the conduct and stated that he was joking. Howard informed Grover that his conduct was inappropriate and that he needed to apologize. Grover

---

[1] Hannaford does not dispute, for the purposes of this motion, that this was a degrading sexual reference. In her deposition, Hampton Store Manager Ashley Campo admitted that "[i]t's not okay for someone to say that to a male associate or a female associate." Doc. no. 25-3 at 183.

[2] Record received annual training on the Policy, which contains prohibitions against harassment and outlines complaint procedures.

2

apologized to Record. Record accepted the apology "with the condition that it never happens again" because if it did, he "would go to HR." Doc. no. 25-2 at 63. After Grover's apology and Record's acceptance, Howard considered the matter resolved and did not document the incident.

Record separately reported Grover's conduct to the Hampton store manager, Ashley Campo. Campo spoke to Howard about the matter and informed the store's associate relations manager, as required by the Policy. Campo then spoke to Grover about his conduct and emphasized that he could not make inappropriate jokes or comments. Campo, like Howard, concluded that the matter was resolved and did not issue formal written discipline.

Thereafter, Campo met with all store managers to review Hannaford's Policy. Campo also followed up with Record on multiple occasions to make sure Record had nothing to report and that he was still comfortable with Hannaford's response. Because Campo had "known [Record] a long time," Campo thought Record was satisfied with her response and that Record would feel comfortable reporting any additional instances of harassment. Doc. no. 25-3 at 102-03.

Hannaford maintains that Howard's and Campo's conversations with Grover constitute a "verbal reprimand." But given the nature of Grover's conduct and the language of the Policy, Record assumed that Hannaford would issue formal discipline of some kind, such as a formal reprimand or written documentation of the misconduct. The Policy states that Hannaford will address allegations of harassment as follows:

3

> Once an allegation of harassment or discrimination is brought to the attention of [management] . . . a fact-finding investigation will be launched promptly.  If necessary, intermediate measures may be taken before completing the investigation to ensure that further discrimination, including harassment, does not occur.
> . . .
> Any associate who is found, after appropriate investigation, to have engaged in illegal discrimination, including harassment of any kind toward another associate . . . will be subject to appropriate disciplinary action, up to and including termination of employment.

Doc. no. 29-2.

Regardless of whether Howard's and Campo's conversations constituted "appropriate disciplinary action" under the Policy —as Hannaford contends—it is undisputed that Hannaford managers did not document the incidents in Grover's personnel file.  Campo later explained that she chose not to document the incidents because she wanted to "give [Grover] the opportunity to change that behavior before we started documenting him."  Doc. no. 25-3 at 45-47.

According to Record, Grover continued to be "abrasive and unprofessional" and his inappropriate behavior continued.  Specifically, Record alleges that in August 2017, Grover: (1) called Record a "bitch" while inflecting his voice to sound more effeminate; and (2) attracted the attention of a nearby employee and made gestures implying that Record was performing oral sex on him when Record bent down to place a mat beneath a scale.  On August 25, 2017, without reporting Grover's more recent conduct, Record submitted notice of his intent to resign, effective September 1.

4

Upon learning of Record's intended resignation, Campo asked to meet with him. At their meeting the following day, August 26, Record informed Campo about Grover's additional inappropriate conduct and explained that he had obtained a new job at Golden Harvest Supermarket. Campo told Record she would investigate his complaint, and she asked Record to provide a written list of Grover's August conduct. She also expressed regret that Record had not told her earlier about Grover's conduct and offered him the opportunity to remain at Hannaford as a part-time employee. Campo directed an assistant manager to investigate Record's complaints. Grover denied the new allegations. Campo then met with Grover and again reviewed the Policy with him. Grover signed a copy of the Policy, and Hannaford placed that copy in his personnel file.

At some point, Record learned that Hannaford had not documented the March incidents in Grover's file. Record had previously been the subject of a complaint (alleging that he had placed his hands on the chest of another employee), which Record contended was a false accusation. Despite Record's denial, Hannaford managers verbally reprimanded Record and placed a written record of that discipline, called a "coaching memo," in his file. In contrast, after Record's complaint about Grover—which Grover did not deny—Hannaford placed no written record in Grover's file.

Record began work at Golden Harvest Supermarket a week after leaving Hannaford, on September 6. After Record started his new job, Campo again offered Record the opportunity to return to Hannaford. In early September, Record sent

5

multiple emails to Campo saying that he wanted to return.  According to Record, he told Campo that he would be willing to consider further employment with Hannaford if he could be transferred to another store without demotion, or if he could return to the Hampton store without having to work for Grover.  By mid-September, Campo informed Record that his former role had been filled, and she invited him to apply to other full-time positions.  On September 16, Record left employment at Golden Harvest and met with Hannaford supervisors to discuss open positions.  Record and Campo exchanged additional emails and voicemails about returning to Hannaford.  In these communications, Record expressed his hope that he could keep his same pay and benefits.  Ultimately, however, Record accepted a full-time position at McKinnon's Supermarket and began working there on September 29.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the" nonmovant.  Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 47 (1st Cir. 2019) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  A fact is material if it has "the potential to affect the outcome of the suit under the applicable law."  Id. at 46 (quoting Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir.

2017)). All facts and reasonable inferences are viewed in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).

## DISCUSSION

Record brings the following claims: violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, alleging a hostile work environment on the basis of gender (Count I) and on the basis of sex and sexual orientation (Count II); violation of New Hampshire's anti-discrimination statute, RSA 345-A:7, alleging a hostile work environment (Count III); and wrongful termination (Count IV).[3] Hannaford moves for summary judgment, arguing that there are no genuine disputes of material fact and that all of Record's claims fail as a matter of law based on the undisputed facts. Record objects, arguing that material facts remain in dispute on each count.

The court will first address Record's hostile work environment claims (Counts I-III) and then his wrongful termination claim (Count IV).

I.     Hostile Work Environment

Claims alleging a hostile work environment under New Hampshire's anti-discrimination law are analyzed under Title VII's standards. See Rolfs v. Home Depot U.S.A., Inc., 971 F. Supp. 2d 197, 208 (D.N.H. 2013) ("Because the New

---

[3] Record does not specify whether he brings Count IV under federal or state law.

Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354-A, the court will address [plaintiff's] state and federal claims together using the Title VII standard." (quoting Hudson v. Dr. Michael J. O'Connell's Pain Care Ctr., Inc., 822 F. Supp. 2d 84, 92 (D.N.H. 2011)); Madeja v. MPB Corp., 149 N.H. 371, 379 (N.H. 2003) (relying on federal precedent to interpret RSA 354-A). Accordingly, the court analyzes all three claims under the Title VII standard.

To prevail on a hostile work environment claim under Title VII, a plaintiff must establish:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Ponte v. Steelcase Inc., 741 F.3d 310, 320 (1st Cir. 2014) (quoting Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir.2007)); see also Rand v. Town of Exeter, 976 F. Supp. 2d 65, 72 (D.N.H. 2013) (applying Title VII framework to New Hampshire sexual harassment claim).

Regarding sexual harassment in the workplace, a court must "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Bos., 398 F.3d 76, 92 (1st Cir. 2005). To distinguish between unlawful harassment and merely unpleasant behavior, the court must consider all relevant circumstances, including "the frequency of the

8

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002). "Subject to some policing at the outer bounds [by the court], it is for the jury to weigh [the relevant] factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 91 (1st Cir. 2018) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18-19 (1st Cir. 2002)).

Hannaford does not contest, for the purposes of this motion, that a reasonable jury could conclude that Record has established the first three elements of a hostile work environment claim. Hannaford contends, however, that no reasonable jury could conclude that Record has shown the last three elements: that the harassment was sufficiently severe or pervasive; that the conduct was objectively and subjectively offensive; and that there is a basis for employer liability. See Ponte, 741 F.3d at 20. The court addresses each in turn.

a. Severe or Pervasive

Hannaford first argues that the incidents of alleged harassment are not "sufficiently severe or pervasive to alter the conditions of [Record's] employment and create an abusive work environment." Perez v. Horizon Lines, Inc., 804 F.3d 1, 6 (1st Cir. 2016) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir.2003);

accord Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  Hannaford identifies several First Circuit cases finding that sexualized comments or actions were not severe or pervasive.  See Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 53-54 (1st Cir. 2006); Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 38-39 (1st Cir. 2003); Morgan v. Massachusetts General Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990).  However, these cases are of little analogical value because whether particular conduct is sufficiently severe or pervasive is a fact- and case-specific inquiry.  See Rivera-Rivera, 898 F.3d at 91.

     Here, Record experienced multiple instances of harassment from his supervisor in front of co-workers, including physical contact to his genitals, name calling, offensive gestures, and degrading comments.  Grover's harassment started almost immediately after Grover began overseeing Record and continued after Hannaford's management specifically instructed Grover not to engage in such conduct.  Grover's conduct occurred over several months and included alleged verbal and physical harassment.  Viewing the facts favorably to Record, a jury could reasonably conclude that these acts constitute sufficiently severe or pervasive harassment.  See Alberg v. Foss Motors, Inc., No. 17-CV-79-AJ, 2018 WL 6303824, *5 (D.N.H. Nov. 27, 2018) (denying summary judgment because of genuine disputes of fact regarding whether plaintiff faced severe or pervasive harassment when plaintiff was subject to sexualized comments and was slapped on the buttocks).

    b. <u>Objectively and Subjectively Offensive</u>

Hannaford next argues that the alleged harassment was not "objectively and subjectively offensive" and that a reasonable person would not find the harassment "hostile or abusive." Ponte, 741 F.3d at 320. Hannaford claims that Grover's comments and actions were nothing more than occasional inappropriate efforts at joking. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Hannaford also contends that Record's desire to return to work at Hannaford undermines the notion that he found Grover's conduct to be hostile and abusive.

A jury may ultimately agree with Hannaford. However, viewing the facts in a light most favorable to Record, a reasonable jury could conclude that Grover's conduct was both objectively and subjectively offensive. According to Record, Grover harassed him when he twice made physical contact with Record's genitals, made gestures implying that Record was performing oral sex on him, and made lewd comments about Record's sexual orientation in front of Record and other employees. A reasonable jury could certainly conclude that this conduct was objectively offensive. Moreover, Record's desire to return to Hannaford does not necessarily prevent a reasonable jury from concluding that Record found Grover's conduct subjectively offensive, especially given that Record resigned from Hannaford—his employer of nearly ten years—after only six months of working under a new supervisor.

    c.  Some Basis for Employer Liability

Hannaford next argues that Record has not established a "basis for employer liability" to hold Hannaford liable for Grover's alleged misconduct. Ponte, 741 F.3d at 320. Under Title VII, an employer may be vicariously liable for a supervisor's sexual harassment; however, "the employer may prevail if it demonstrates a two-part affirmative defense: that its own actions to prevent and correct harassment were reasonable and that the employee's actions in seeking to avoid harm were not reasonable." Chaloult v. Interstate Brands Corp., 540 F.3d 64, 66 (1st Cir. 2008) (citing Faragher, 524 U.S. at 807, and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998)). This is known as the Faragher–Ellerth affirmative defense. "Both prongs involve a judgment call as to reasonableness which is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor." Agusy-Reyes v. Dep't of Educ. of P.R., 601 F.3d 45, 55 (1st Cir. 2010) (quoting Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 34 (1st Cir. 2003)) (internal quotations omitted).

Hannaford relies on this defense to argue that its employees exercised reasonable care to prevent and correct harassing behavior after the first three instances of alleged harassment in March, and that Record failed to take advantage of preventative or corrective opportunities after the second set of incidents in August.

Once again, this is a question of fact which must be resolved by a jury. Viewing the evidence in a light favorable to Record, a jury could reasonably conclude that the Faragher–Ellerth defense does not exonerate Hannaford. To its

12

credit, Hannaford had the Policy in place and trained its employees—including Record and Grover—regarding the Policy. But after Record reported the first three instances of harassment, Hannaford managers did not issue formal written discipline. They only verbally admonished Grover, which Record argues does not constitute discipline. Importantly, Grover was new to Hannaford when he began harassing Record; this should have been a warning sign to Hannaford that more than verbal admonition may be required. Additionally, Hannaford disciplined Record more severely (by placing a written reprimand in Record's file) for a single act of misconduct that Record denied than it disciplined Grover for multiple acts of misconduct that Grover admitted. The Policy states unequivocally that "any associate who is found, after appropriate investigation, to have engaged in illegal discrimination, including harassment of any kind toward another associate . . . will be subject to appropriate disciplinary action, up to and including termination of employment." A jury could find that, in light of the Policy and the discrepancy between Record's and Grover's discipline experiences, Hannaford's actions to prevent future harassment were not reasonable and that Record's resignation was a reasonable action to avoid harm. See Chaloult, 540 F.3d at 66. Under these circumstances, the reasonableness of Record's decision to resign when Grover resumed the alleged harassment in August is a question for the jury. See Reed, 333 F.3d at 34 (holding that employer's affirmative defense of reasonableness "is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor").

For these reasons, Hannaford's motion for summary judgment on Record's hostile work environment claims is denied.

II. <u>Wrongful Termination</u>

Record claims that Grover's conduct compelled him to leave work and therefore Record's resignation constitutes constructive discharge.

Record does not specify whether he brings this claim under federal or state law. Under Title VII, a constructive discharge claim has two basic elements: "[a] plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign . . . [and] he must also show that he actually resigned." Green v. Brennan, 136 S. Ct. 1769, 1777 (2016); <u>see also</u> Cherkaoui, 877 F.3d at 29. This requires demonstrating a "greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Saliceti-Valdespino v. Wyndham Vacation Ownership, 990 F. Supp. 2d 159, 160 (D.P.R. 2014). This test "is one of objective reasonableness." Cherkaoui, 877 F.3d at 30. The same standard applies to a constructive discharge claim under New Hampshire common law. <u>See</u> Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 249 (N.H. 2006) (holding that constructive discharge "occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign"); Slater v. Town of Exeter, No. CIV 07-407-JL, 2009 WL 737112, *7-8

14

(D.N.H. Mar. 20, 2009) (finding that New Hampshire state law for constructive discharge is not more lenient than federal law).

Here, Hannaford once again urges the court to keep this claim from a jury. The court declines to do so under either federal or state law. The circumstances under which Record resigned and the reasonableness of his decision raise questions of fact which a jury should resolve. Although Record's decision to resign may seem unreasonable to Hannaford, the court cannot conclude—viewing the facts most favorably to Record—that no reasonable jury could find in Record's favor. The court therefore denies Hannaford's motion for summary judgment on Record's claim of wrongful termination.

## CONCLUSION

In this case, genuine disputes of material fact foreclose entry of summary judgment. Accordingly, Hannaford's motion for summary judgment (doc. no. 24) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 22, 2021

cc: Counsel of Record.